UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JAMES E. HARMON,

                      Plaintiff,

     v.

MARNI BOGART,
THE COUNTY OF ERIE,

                      Defendants.

**DECISION AND ORDER**

17-CV-284S

## I.     Introduction

Plaintiff, an attorney with the Defendant Erie County's Department of Social Services, alleges civil rights violations, defamation, and other common law torts against his employers, Erie County Social Services Department director of legal affairs Marni Bogart and Erie County, following his public removal from his office.

Before this Court is Defendants' joint Motion for Summary Judgment[1] (Docket No. 18) to dismiss this action.  Defendants here contend that all of Plaintiff's claims arise from three incidents of February 25, 2016:  Plaintiff's escorted removal from his Rath Building office in front of coworkers and colleagues; Bogart's informing Erie County Family Judge Margaret Szczur that Plaintiff would not return to work for the foreseeable

---

[1]In support of this motion, Defendants submitted their Statement of Undisputed Facts, exhibits, and affidavits, Docket No. 18.  Defendant then filed their reply Response to Plaintiff's Statement; appendix and exhibits; and Reply Memorandum of Law, Docket No. 30.

In opposition to this motion, Plaintiff submits his affidavit with exhibits, Docket No. 23; a responding Local Rule 56 Statement and Statement of Additional Facts, Docket Nos. 29 (corrected with corrected appendix), 26 (corrected), 24; his Memorandum of Law Docket Nos. 28 (corrected), 25.  This Court will cite the amended versions of Plaintiff's papers.

future; and Bogart telling Family Court security officers to bar Plaintiff's entry into the courthouse because he was dangerous (Docket No. 18, Defs. Memo. at 12-13).

For the reasons stated herein, Defendants' Motion for Summary Judgment (Docket No. 18) is granted as to the First Cause of Action only and the remaining claims are remanded to New York Supreme Court for further proceedings.

## II.    Background

### A.  Facts

This is a removed federal civil rights action under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.  Plaintiff also alleges state common law defamation and intentional infliction of emotional distress claims.

The parties dispute whether the facts asserted by Defendants in this motion are undisputed or material (compare Docket No. 18, Defs. Statement with Docket No. 29, Pl. Response to Defs. Statement and Statement of Additional Facts (Corrected) with Docket No. 30, Defs. Response to Pl.'s Local Rule 56(a) Statement of Additional Facts).  Often in his response, Plaintiff challenges the admissibility of the asserted facts (see generally Docket No. 29, Pl. Response).  Plaintiff provides detailed objections and his own submitted set of facts (id.) which Defendants respond thereto (Docket No. 30, Defs. Response to Pl's Statement).  This Court will refer to Defendants' version of events and note, where pertinent, Plaintiff's objections.

### 1.  Events Leading to Plaintiff's Removal

From 2015, Plaintiff was accused by his colleagues of making menacing statements and gestures threatening gun violence.  Employees alleged that Plaintiff said

2

in anger, after a search of his office, "words to the effect of 'one Glock, one minute'" (Docket No. 18, Defs. Statement ¶¶ 12, 13-20, 22, 24).  Plaintiff denies making that statement (Docket No. 29, Pl. Response ¶ 24).  Prior to an active shooter training conducted by Defendant, Plaintiff reportedly said the training consisted of "first you run, then hide, then fight.  If that fails, convince them to shoot your boss" (Docket No. 18, Defs. Statement ¶¶ 35, 36, citing id., Caelie Couell Aff. ¶¶ 8, 9).  Plaintiff vehemently denies this statement on several grounds (Docket No. 29, Pl. Response ¶¶ 35, 36).  Coworker Caelie Couell claims she heard this statement and became sufficiently concerned to report it to Bogart (Docket No. 18, Defs. Statement ¶ 38).

After the December 2015 county worker shooting in San Bernardino, Ms. Couell's concern for her safety grew (Docket No. 18, Defs. Statement ¶¶ 50-51).  Ms. Couell learned that Plaintiff allegedly made a pistol gesture with his hand and said "Pop, pop, pop" when asked what he would do if he won a lottery (id. ¶¶ 52-54); Plaintiff vehemently denies this (Docket No. 29, Pl. Response ¶¶ 52-54).

### 2.  Plaintiff's Removal, February 25, 2016

Ms. Couell remained concerned about Plaintiff's purported statements and gestures, to the point of telling her father, Christopher Couell, who worked in the Erie County Homeland Security Department (Docket No. 18, Defs. Statement ¶¶ 55-57, 60-63).  These actions and comments also disturbed Christopher Couell and he called a Sheriff's Department sergeant about them and his daughter's concerns (Docket No. 18, Defs. Statement ¶¶ 64-65).  The Sheriff's office then contacted the Social Services Legal Affairs office and investigated these activities (id. ¶ 66).

On February 25, 2016, the Sheriff's investigation led the Department of Social Services' management to discuss the matter (id. ¶¶ 67-71).  Defendants concluded that "there was probable cause to believe that Harmon's continued presence on the job represented a potential danger or would severely interfere with operations, and it was decided to place Harmon on an immediate involuntary paid leave while these threatening shooting comments were investigated and Mr. Harmon's fitness to return to work could be assessed," (id. ¶ 72).  Those in that meeting instructed Bogart to make photocopies of Plaintiff's identification and give it to Sheriff's deputies at the entrances to the Rath Building and the Family Court to advise them that Plaintiff was not permitted to be in either building (id. ¶ 74).  They also told Bogart to alert Judge Szczur that Plaintiff would not be returning to her courtroom (id.).

Meanwhile, Plaintiff was on trial before Judge Szczur that morning.  Defendants asked Plaintiff to return to the office during the noon break in the trial.  (Id. ¶¶ 75-76.)  When he returned to the Rath Building, Plaintiff met with Department and County representatives, Sheriff's officers, and a union representative.  Defendants then placed Plaintiff on leave.  (Id. ¶¶ 77-78.)

Sheriff's deputies then escorted Plaintiff from the Rath Building.  He was not handcuffed or shackled and was not touched or held by the deputies.  (Id. ¶¶ 81-84, 122.)  The record does not indicate whether the press was informed of Plaintiff's removal (see Docket No. 18, Defs. Statement ¶ 85); Plaintiff says he did not know whether there were any media reports of the incident (Docket No. 29, Pl. Response ¶ 85).  Finally, Plaintiff was not arrested (Docket No. 18, Defs. Statement ¶ 87).

Bogart later copied Plaintiff's identification and left copies with security at the Rath Building and Family Court (id. ¶¶ 92, 96-97).  She later met with Judge Szczur about Plaintiff's departure but did not disclose specifics why Plaintiff would not appear that afternoon or later (id. ¶¶ 103-06).

Defendants restored Plaintiff to work on August 22, 2016, and received his full salary and benefits during his leave (id. ¶¶ 117-18).

### B. Procedural History

#### 1. Complaint

Plaintiff complains that, on February 25, 2016, he was escorted out of his office by deputies in front of colleagues and co-workers, with this alleged "perp walk" being conducted at Defendants' direction (Docket No. 1, Notice of Removal, Compl. ¶ 6).  Later that day, Bogart told Judge Szczur that Plaintiff was going to be out of the office for the foreseeable future.  Bogart also told the judge that she would not get into Plaintiff's personal problems, but Plaintiff alleges that Bogart spread "innuendo to imply, falsely, that there might be something embarrassing regarding" him.  (Id. ¶ 7.)

Plaintiff asserts in his first cause of action infringement of his civil rights (id. ¶¶ 13-17).  Plaintiff alleged in his second cause of action common law defamation from Bogart's statement to Judge Szczur that Bogart meant that Plaintiff was unfit or in trouble when Defendants removed him from work (id. ¶¶ 19-23).  In the third cause of action, Plaintiff claims that he endured mental suffering from Bogart's statements (id. ¶¶ 25-27).

2.   Proceedings

Defendants answered in state court (Docket No. 1, Notice of Removal, Ex. C) on

March 29, 2017.  They then filed their Notice of Removal to this Court on March 31, 2017

(Docket No. 1).  Following discovery, Defendants moved for summary judgment (Docket

No. 18).

Responses to Defendants' motion initially were due on November 30, 2018

(Docket No. 20), but this was extended (see Docket No. 21) to December 5, 2018, and

replies were due by December 21, 2018 (Docket No. 22).  Following timely submissions

by the parties, the motion was deemed submitted without oral argument.

### III.     Discussion

A.  Applicable Standards

1.  Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a).  A

fact is "material" only if it "might affect the outcome of the suit under governing law,"

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202

(1986).  A "genuine" dispute, in turn, exists "if the evidence is such that a reasonable jury

could return a verdict for the non-moving party," id.  In determining whether a genuine

dispute regarding a material fact exists, the evidence and the inferences drawn from the

evidence "must be viewed in the light most favorable to the party opposing the motion,"

6

Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (internal quotations and citations omitted).

"Only when reasonable minds could not differ as to the import of evidence is summary judgment proper," Bryant v. Maffucci, 923 F.32d 979, 982 (2d Cir. 1991) (citation omitted).  Indeed "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper," Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82, 83 (2d Cir. 2004) (citation omitted).  The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial," Anderson, supra, 477 U.S. at 249.

"When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," Cordiano v. Metacon Gun Club, Inc., 575 F.3d 199, 204 (2d Cir. 2009), citing, Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  "Where the moving party demonstrates 'the absence of a genuine issue of material fact,' the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact," Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (citation omitted) (quoting Celotex, supra, 477 U.S. at 323).  The party against whom summary judgment is sought, however, "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts

7

showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (emphasis in original removed).

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(a).  The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.  In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the nonmovant.  Ford, supra, 316 F.3d at 354.

The Local Civil Rules of this Court require that movant and opponent each submit "a separate, short, and concise" statement of material facts, and if movant fails to submit such a statement it may be grounds for denying the motion, W.D.N.Y. Loc. Civ. R. 56(a)(1), (2).  The movant is to submit facts in which there is no genuine issue, id. R. 56(a)(1), while the opponent submits an opposing statement of material facts as to which it is contended that there exists a genuine issue to be tried, id. R. 56(a)(2).  Each numbered paragraph in the movant's statement will be deemed admitted unless specifically controverted by a correspondingly numbered paragraph in the opponent's statement, id.  Absent such an opposing statement, the facts alleged by the movant are deemed admitted.  Each statement of material fact is to contain citations to admissible

evidence to support the factual statements and all cited authority is to be separately submitted as an appendix to that statement, id. R. 56(a)(3).

2.   Removal and Supplemental Jurisdiction

Original federal jurisdiction here arises from removal based upon Plaintiff's First Cause of Action under 42 U.S.C. § 1983, see 28 U.S.C. § 1446(a) (Docket No. 1, Notice of Removal ¶¶ 6-7).

Section 1441(a) of the Judiciary Code provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending," 28 U.S.C. § 1441(a).

As noted by commentators

> "the mere reference to some aspect of federal law in the complaint does not automatically mean that an action is removable.  Like federal-question jurisdiction generally, there must be a substantial federal question that is an integral element of the plaintiff's claim for relief, not merely an ancillary federal issue or a claim that, properly analyzed, arises only under state law,"

14C Charles A. Wright, Arthur R. Miller, Edward H. Cooper, Joan E. Steinman, and Mary Kay Kane, Federal Practice and Procedure § 3722, at 94 (Jurisdiction rev. 4th ed. 2018).

Subject matter jurisdiction over the state law claims may be raised by the parties or by this Court sua sponte, Lyndonville Sav. Bank & Trust v. Lussier, 211 F.3d 697, 700-01 (2d Cir. 2000); LaChapelle v. Torres, 37 F. Supp. 3d 672, 680 (S.D.N.Y. 2014).  This Court must examine its jurisdiction under removal at any point in the proceeding, Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 351, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (the district court has "to consider throughout the litigation whether to exercise its

jurisdiction over the case"); see 14C Federal Practice and Procedure, supra, § 3722, at 115.  This Court, in its discretion under § 1367(c) may decline to hear supplemental state law claims and remand them to state court, 14C Federal Practice and Procedure, supra, § 3722, at 122.

Plaintiff's defamation and intentional infliction of emotional distress claims share the same nucleus of operative facts as his federal civil rights claims.  Under 28 U.S.C. § 1367, this Court can exercise supplemental jurisdiction over Plaintiff's state law claims, see Klein v. London Star Ltd., 26 F. Supp. 2d 689, 692 (S.D.N.Y. 1998).

"And if the court determines after removal that, in fact, there were no viable federal-question claims to confer jurisdiction, then, it must remand the case, including the supplemental claims to the state court," 14C Federal Practice and Procedure, supra, § 3722, at 123-25, see Carnegie-Mellon Univ., supra, 484 U.S. at 351-57.

3.  Civil Rights

Plaintiff invokes his free speech rights under the First Amendment, his right to avoid unreasonable seizure under the Fourth Amendment, and preservation of his liberty and property under the Due Process Clauses of the Fifth and Fourteenth Amendments. To state a claim under 42 U.S.C. § 1983, Plaintiff must allege that some person has deprived him of a federal right and that liable person acted under color of law, Gomez v. Toledo, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572(1980) (Docket No. 18, Defs. Memo. at 22-23).  Plaintiff here has alleged Defendant Bogart acted under color of law (see Docket No. 1, Notice of Removal, Ex. B, Compl. ¶ 15).

10

For a due process violation, Plaintiff needs to allege a property or liberty interest infringed by Defendants, Ware v. City of Buffalo, 186 F. Supp.2d 324, 331 (W.D.N.Y. 2001) (Curtin, J.) (Docket No. 30, Defs. Reply Memo. at 12). In a two-step analysis, Plaintiff first must identify that interest and if a protected interest is identified "a court must then consider whether the government deprived the plaintiff of that interest without due process. The second step of the analysis thus asks what process was due to the plaintiff, and inquires whether that constitutional minimum was provided," Narumanchi v. Board of Trustees of Conn. State Univ., 850 F.2d 70, 72 (2d Cir. 1988); Ware, supra, 186 F. Supp. 2d at 331-32.

Plaintiff now alleges a stigma-plus deprivation of his liberty and property interest in violation of the Fifth (and presumably Fourteenth) Amendment Due Process Clause (Docket No. 28, Pl. Memo. at 24-25). An "action can be grounded in 42 U.S.C. § 1983 when that plaintiff can demonstrate 'a stigmatizing statement plus a deprivation of a tangible interest,'" Vega v. Lantz, 596 F.3d 77, 81 (2d Cir. 2010) (quoting Algarin v. Town of Wallkill, 421 F.3d 137, 138 (2d Cir. 2005)). Defamation by itself is not a deprivation of liberty or property interest, Siegert v. Gilley, 500 U.S. 226, 233, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); see Patterson v. City of Utica, 370 F.3d 322, 329-30 (2d Cir. 2004).

To establish a "stigma plus" claim,

a plaintiff must show (1) "the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false," and (2) "a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." Sadallah v. City of Utica, 383 F.3d 34, 38 (2d Cir. 2004) (internal citations and quotation marks omitted) (Sotomayor, J.) This state-imposed alteration of status or burden

must be "in addition to the stigmatizing statement." <u>Id.</u> (emphasis omitted).
"Thus, even where a plaintiff's allegations would be sufficient to
demonstrate a government-imposed stigma, such defamation is not, absent
more, a deprivation of a liberty or property interest protected by due
process." <u>Id.</u> (citing <u>Siegert v. Gilley</u>, 500 U.S. 226, 233, 111 S.Ct. 1789,
114 L.Ed.2d 277 (1991)).

<u>Vega</u>, <u>supra</u>, 596 F.3d at 81 (<u>pro se</u> inmate challenging sex offender classification); <u>see
also</u> <u>Doe v. Dep't of Pub. Safety ex rel. Lee</u>, 271 F.3d 38, 47 (2d Cir 2001) (emphasis
added at "in addition" to), <u>rev'd on other grounds</u> <u>sub nom.</u> <u>Conn. Dep't of Pub. Safety v.
Doe</u>, 538 U.S. 1, 6-7, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003).  The "'deleterious effects
[flowing] directly from a sullied reputation,' standing alone, do not constitute a 'plus' under
the 'stigma plus' doctrine," <u>Valmonte v. Bane</u>, 18 F.3d 992, 1001 (2d Cir. 1994); <u>Sadallah</u>,
<u>supra</u>, 383 F.3d at 38.

Examples of additional deprivation for a plus claim include deprivation of plaintiffs'
property, termination of government employment, <u>Sadallah</u>, <u>supra</u>, 383 F.3d at 38, loss
of right to purchase alcohol, <u>Wisconsin v. Constantineau</u>, 400 U.S. 433, 434, 91 S.Ct.
507, 27 L.Ed.2d 515 (1971), foreclosure to take advantage of government employment,
<u>Board of Regents v. Roth</u>, 408 U.S. 564, 573-74, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972),
and extinguishing the right to public education, <u>Goss v. Lopez</u>, 419 U.S. 565, 574-75,
95 S.Ct. 729, 42 L.Ed.2d 725 (1975), <u>see</u> <u>Balentine v. Tremblay</u>, 554 F. App'x 58, 60 (2d
Cir. 2014) (summary Order, summarizing cases).

B.  Civil Rights Claims

The parties first raise the state law defamation and intentional infliction of
emotional distress claims.  This Court, however, will address first Plaintiff's federal civil
rights First Cause of Action, the basis for this Court's original jurisdiction.  After deciding

whether Plaintiff states a viable federal claim there, this Court will consider whether to exercise supplemental jurisdiction over the defamation and intentional infliction claims, 14C Federal Practice and Procedure, supra, § 3722, at 122.

Defendants argue that Plaintiff was not deprived of his rights and suffered no losses, hence cannot prevail in his civil rights claims (Docket No. 18, Defs. Memo. at 22-32, 33-35), see Dill v. Village of Gowanda, 952 F. Supp. 989, 997 (W.D.N.Y. 1997) (Skretny, J.) (municipalities not liable for punitive damages). They assert that Plaintiff was not denied the right to free speech by being barred from the Rath Building, because the Rath Building was not a free speech public forum (id. at 25-28). Defendants also deny that Plaintiff was deprived of any property interest in his law license (which was not suspended or revoked by his removal from his office) (id. at 28-29; see Docket No. 30, Defs. Reply Memo. at 12). Defendants also assert Plaintiff had no other constitutional or due process right deprived by his removal (Docket No. 18, Defs. Memo. at 29-32). Even if these events were deemed defamatory, Defendants argue that it was "mere" defamation which does not invoke a requirement for procedural due process (id. at 29), Paul, supra, 424 U.S. at 706. By being placed on paid leave pursuant to New York Civil Service Law, Plaintiff thus received all the process that was due him (id. at 31-32; Docket No. 30, Defs. Reply Memo. at 12).

Defendants contend that the loss of one's reputation, without more, is not a protected liberty or property interest under the Due Process Clause (id.), Lauro v. Charles, 219 F.3d 202, 206 (2d Cir. 2000), or that the so-called "perp walk" invaded Plaintiff's Fourth Amendment rights (id. at 30-31).

13

Plaintiff asserts issues of fact about the perp walk, contending that Defendants violated his Fourth Amendment rights and deprived him of liberty under the Fifth Amendment in stigma-plus claim (Docket No. 28, Pl. Memo. at 22-27).  He contends that Lauro, supra, 219 F.3d 202, held that a "perp walk" is a seizure in violation of the Fourth Amendment and violates his privacy rights (id. at 22-23).

In reply, Defendants contend that Plaintiff cannot sustain his Fifth Amendment claim because Plaintiff failed to establish having any property interest (Docket No. 30, Defs. Reply Memo. at 12).  Defendants also deem most of Plaintiff's First (where not contested by Plaintiff) and Third Causes of Action (for intentional infliction of emotional distress) abandoned (id. at 1).

### 1.   Fourth Amendment Seizure Claim and "Perp Walks"

Defendant argues that the so-called perp walk did not violate Plaintiff's due process rights (Docket No. 18, Defs. Memo. at 29, 30).  The parties differ over the Second Circuit's holding in Lauro, supra, 219 F.3d 202, with Plaintiff countering that the perp walk violated both his rights under the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment (Docket No. 28, Pl. Memo. at 23-24).  Judge Guido Calabresi in Lauro recognized that the plaintiff there asserted the perp walk violated the Fourth Amendment rather than the Due Process Clause, id. at 207-08.

Judge Calabresi posed the issue there "may the police constitutionally force an arrested person to undergo a staged 'perp walk' for the benefit of the press, when the walk serves no other law enforcement purpose?" id. at 203, answering that question in the negative and holding that such a perp walk violated the suspect's Fourth Amendment

14

rights, id. at 213.  A "perp walk" there was defined as walking the arrestee before the media so that the event and arrestee could be photographed or filmed, 219 F.3d at 203-04.  Judge Calabresi distinguished the staged version, there the suspect "taken outside the station house, at the request of the press, for no reason other than to allow him to be photographed," from the transfer of an arrestee from point to point, id. at 204.

The Second Circuit's objection to the perp walk is to the staged or choreographed variety, id. at 203-04, 212-13; see Caldarola v. County of Westchester, 343 F.3d 570, 571, 572, 573 (2d Cir. 2003); see also Lyde v. New York City, 145 F. Supp. 2d 350, 352, 353 (S.D.N.Y. 2001) (arrested plaintiff instructed to stay on precinct steps to be videotaped arrested by local media, alleged to be a staged perp walk).  Staged perp walks expose the suspect's privacy and the presumption of innocence diminished by showing their transport before the press.  The staged perp walk implicates the suspect's "protected privacy interests in not being 'displayed to the world, against his will, in handcuffs, and in a posture connoting guilt,'" Caldarola, supra, 343 F.3d at 573 (quoting Lauro, supra, 219 F.3d at 212 n.7).  A staged walk served no government interest because any legitimate state interest in accurate reporting of police activities is wiped out by the fictional dramatization, id.; Lauro, supra, 219 F.3d at 213.

The Second Circuit expressly did not hold that "all, or even most, perp walks are violations of the Fourth Amendment," Lauro, supra, 219 F.3d at 213.  Where there is a legitimate law enforcement justification for transporting a suspect, such as Plaintiff's removal here, even if photographed during the transport, such a so-called perp walk does not violate the Constitution, id.

The difference between the arrest in Lauro (or the video recorded arrest of corrections officers at their headquarters in Caldarola, supra, 343 F.3d at 573, 576-77 (cf. Docket No. 28, Pl. Memo. at 23-24)) and Plaintiff's removal in the present case is that Plaintiff here did not allege any media coverage or recording of his eviction. Plaintiff was not arrested. Plaintiff's removal was not staged or repeated to have a public audience or broadcast. Plaintiff alleges that his removal by deputy escort caused an instant commotion in Judge Szczur's chambers (id. at 26). Plaintiff has not claimed a wider broadcast or that Defendants caused notice of the removal to reach the chambers.

Plaintiff's removal was a transfer out of an office building that is constitutionally reasonable seizure under Second Circuit caselaw, see Lauro, supra, 219 F.3d at 213. This removal was not reenacted for the benefit of the media or public disclosure. Plaintiff was escorted only once from the Rath County office building, but the record does not show Defendants removed him to maximize the exposure. There is no evidence in this case that Defendants staged Plaintiff's removal. There was no seizure of "intangibles such as plaintiff's own image and he sound of his voice," Lauro v. City of N.Y., 39 F. Supp. 2d 351, 363 (S.D.N.Y. 1999), aff'd on other grounds, 219 F.3d 202.

Although Plaintiff cites Caldarola favorably (Docket No. 28, Pl. Memo. at 23-24, quoting Caldarola, supra, 343 F.3d at 577), the Second Circuit there held that the defendant officials had legitimate government purposes that outweighed plaintiffs' privacy interests in denying a Fourth Amendment violation there, 343 F.3d at 572 (see id. at 24). The sentence Plaintiff quotes from that case is part of longer concluding discussion that

16

upheld the government's purpose in recording plaintiffs during their arrest and dissemination of the video recording, id.

Plaintiff characterized his removal as a "perp walk," but Plaintiff was not under arrest and was not visibly in handcuffs or manacles. He was escorted by Sheriff's deputies and directed out of the building but with nothing in the record indicating that he was under other visible restraints. This removal was reasonable under the Fourth Amendment. While embarrassing, without more (such as the staging and use of visible confinement devices to present Plaintiff as a guilty suspect before the media or public, as considered in Lauro and Caldarola) Plaintiff fails to allege a Fourth Amendment violation under Lauro/Caldarola standards for staged "perp walks." Defendants' Motion for Summary Judgment (Docket No. 18) dismissing this claim is granted.

2. First Amendment Claim

As for Plaintiff's free speech infringement, this Court cannot see how his rights were infringed. Plaintiff only was barred from returning to his office in the Rath Building or appearing in Family Court for employer Department of Social Services during his involuntary administrative leave (Docket No. 18, Defs. Memo. at 26). Plaintiff does not dispute Defendants' contention that the Rath Building was not a public forum (id. at 26-27), United States v. Grace, 461 U.S. 171, 177-78, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983) (government office buildings and courthouses are non-public fora). Even during his administrative leave, Plaintiff had access to the Rath Building, although accompanied (id. at 27-28). He does not claim he was deprived of access to Family Court to represent parties other than his employer, the Department of Social Services and its clients, during

his administrative leave.  Plaintiff does not respond to these arguments or raise a defense to his free speech claim.  As suggested by Defendants (see Docket No. 30, Defs. Reply Memo. at 1), this claim is deemed abandoned as a result.

If considered, Plaintiff has not established that his removal from the Rath Building hindered his free speech rights in any way.  He has not stated that he had no other means to express himself.  He does not claim any hinderance during his removal to express himself.   His concern was remaining at work and not being removed (even for administrative leave) in the way he was ousted.

On that portion of Defendants' Motion for Summary Judgment (Docket No. 18) to dismiss the First Cause of Action's free speech claims is also **granted**.

### 3.  Due Process Claim

#### a.  Deprivation of Property or Liberty

For his due process claims, Plaintiff needs to establish that he had a property or liberty interest that was deprived by his forced removal and placement on paid administrative leave.  Plaintiff, however, has not alleged the property he lost from his removal and being placed on paid leave.  He alleged in the Complaint his property interest in his law license was affected (Docket No. 1, Notice of Removal, Ex. B, Compl. ¶ 15) and in his deposition testified he was deprived of his umbrella and access to his credit union account, although he later regained the umbrella and access to that account (Docket No. 18, Defs. Atty. Decl. Ex. E, Pl. EBT Tr. at 60-62; Docket No. 18, Defs. Memo. at 29).  Plaintiff does not specify how his law license was jeopardized or if he faced any subsequent suspension, disbarment, or other discipline due to this negative employment

0action.  Therefore, this aspect of Plaintiff's claim is dismissed and Defendants' Motion for Summary Judgment (Docket No. 18) is granted.

### b.  Stigma-Plus Theory

Plaintiff alternatively contends under a stigma-plus theory that derogatory statements accompanied his removal (that he was a danger and should be banned from County offices).  Plaintiff, however, has not established the element of a <u>material</u> <u>state-imposed</u> burden or alteration to his rights or status, <u>Vega</u>, <u>supra</u>, 596 F.3d at 81.  The statement (the declared ban due to his imposed leave) is part of the alleged derogatory statement.  The alteration of status or the added burden has to be distinct from the stigmatizing statement, <u>Sadallah</u>, <u>supra</u>, 383 F.3d at 38 (plaintiffs claimed defamatory statements about their business); <u>Vega</u>, <u>supra</u>, 596 F.3d at 81.  Then-Judge Sonia Sotomayor held in <u>Sadallah</u> that the deprivation of good will following the damage to plaintiffs' reputation was not a state-imposed burden that established stigma-plus liability, 383 F.3d at 38-39.  She concluded that the harm to good will was direct "'deleterious effects'" of the defamation, <u>id.</u> at 39.  Plaintiff Harmon here was not terminated but was placed on paid administrative leave.  He has no deprivation of his legal rights or status.

In <u>Vega v. Miller</u>, 273 F.3d 460, 470 (2d Cir. 2001), cited by Plaintiff (Docket No. 28, Pl. Memo. at 25), that plaintiff claimed he was denied a liberty interest in his continued employment, claiming that defendants stigmatized him as he was terminated.  The Second Circuit there held that, despite the stigmatizing statement during or after his termination, there was no violation of a federal right, <u>id.</u>  The court then found that plaintiff's stigma-plus claim failed for lack of evidence, <u>id.</u>

Plaintiff here claims the stigma arose from Plaintiff's banishment from County office buildings, the false claim of being dangerous, the "perp walk," and Bogart displaying his identification to security officers as a warning not to admit him to Erie County Family Court (Docket No. 28, Pl. Memo. at 25).  The alleged "plus" appears to be Plaintiff being kept in "administrative limbo" for six months following his removal and being transferred from Judge Szczur's Part and away from child abuse and neglect cases (Plaintiff's specialty) (id. at 26).  He claims restrictions on his liberty affecting his law license (id. at 27).

This, however, fails to state a material state-imposition on his rights or status to allege the "plus" for a stigma-plus claim.  The so-called administrative limbo was the direct deleterious effect of the statements; he was removed and placed on leave (in a defamatory manner, according to Plaintiff), the effect of which was awaiting resolution of his employment status.  Plaintiff did not lose his job (cf. Patterson, supra, 370 F.3d at 330) or property (cf. Greenwood v. New York, Office of Mental Health, 163 F.3d 119, 124 (2d Cir. 1998)) to be the "plus" to the stigma from the statements and actions of February 25, 2016.  Again, Plaintiff has not alleged or established that his law license (and not how he would perform his legal job with the Department of Social Services) was impacted by the alleged stigmatizing statements and actions.  The record is bereft of references to the Grievance Committee or the Appellate Division for any discipline against Plaintiff regarding this incident to serve as a "plus".  Thus, Plaintiff has not alleged stigma-plus liability.

Therefore, Defendants' Motion for Summary Judgment (Docket No. 18) dismissing the due process claims alleged in the First Cause of Action is granted.

Given this disposition, this Court need not address Defendants' claim for qualified immunity (Docket No. 18, Defs. Memo. at 32-33) or whether the statements were defamatory.

### C.  Exercise of Supplemental Jurisdiction

What remains are Plaintiff's Second and Third Causes of Action for common law defamation and intentional infliction of emotional distress.

This Court enjoys the discretion under 28 U.S.C. § 1367 to retain jurisdiction over these state law claims once the alleged federal civil rights claims are gone.  With dismissal of the federal civil rights claims asserted in the First Cause of Action, there is no substantial federal question remaining, Sadallah, supra, 383 F.3d at 40.  While these claims arise from the same operative facts for Plaintiff's First Cause of Action for federal civil rights violations, the remaining claims quintessentially involve questions of New York law since defamation "is an issue of state, not of federal constitutional law," Sadallah, 383 F.3d at 38.  Plaintiff's case mostly is a defamation and intentional infliction of emotional distress case from his escorted removal from his office.

This Court declines to exercise supplemental jurisdiction, pursuant to § 1367(c)(2) (claims substantially predominate over the claim in which the court had original jurisdiction) and (3) (dismissal of all claims over which it had original jurisdiction).  The remaining issues thus are better resolved by the state courts.  The remaining claims are remanded to New York State Supreme Court for disposition, Carnegie-Mellon Univ., supra, 484 U.S. at 351-57.

## IV.    Conclusion

Defendants' Motion for Summary Judgment (Docket No. 18) is granted as to the First Cause of Action.  With the original subject matter jurisdiction being dismissed, this Court declines to exercise supplemental jurisdiction over the Second and Third Causes of Action and will remand this case to New York State Court.  Given this result, this Court need not address the merits of Plaintiff's defamation or intentional infliction of emotional distress claims or Defendants' claim of qualified immunity.

## V.    Orders

IT HEREBY IS ORDERED, that Defendants' Motion for Summary Judgment (Docket No. 18) is GRANTED IN PART, as stated above, dismissing the First Cause of Action.

FURTHER, that the Second and Third Causes of Action in this case are REMANDED to the New York State Supreme Court for further proceedings.

FURTHER, that the Clerk of Court is DIRECTED to return the record to the New York State court and to close this federal case.

SO ORDERED.


Dated:        November 9, 2020
              Buffalo, New York


                                              s/William M. Skretny
                                             WILLIAM M. SKRETNY
                                            United States District Judge

22